MINNA WIRTH V. VINCENT B. CALHOUN ET AL.

FILED MARCH 19, 1902. No. 10,917.

Commissioner's opinion, Department No. 3.

1. **Breach of Contract:** MATTER OF DEFENSE. In an action by an employee against his employer for damages for breach of contract, arising from the wrongful discharge of the former, that the plaintiff obtained, or by the exercise of due diligence, might have obtained, other employment, is a matter of defense, which the plaintiff is not required to anticipate in his petition.

2. ———: ———: BURDEN OF PROOF. The burden of proof is on the defendant to establish such defense, and on failure thereof, or of showing other facts in mitigation of damages, the measure of damages is the contract price.

3. **Sunday:** CONTRACT: SPORTING. A contract whereby a party is required to furnish one performance, consisting of music, dancing and feats of contortion, each day of the week, including Sunday, is not invalid as in contravention of section 241 of the Criminal Code; such performances not falling within the prohibition of said section.

4. ———: ———: ———: PUBLIC POLICY. The legislature having expressed the policy of the state in regard to the observance of Sunday by said section, the court will not add to the restrictions thus imposed by declaring such contract contrary to public policy.

ERROR from the district court for Douglas county. Tried below before POWELL, J. *Affirmed.*

*Charles A. Baldwin,* for plaintiff in error:

The contract in this case was in violation of the Criminal Code, section 241. In the Code the descriptive term used is "common labor." This term is defined by lexicographers: "The act of doing or endeavoring to do that which involves hard work, toil or exertion of strength, whether physical or mental, any kind of exertion which involves or is attended with fatigue—the exertion of the body or of the mind in those operations necessary for obtaining the means of subsistence, as distinguished from the exercise of the body in amusement or recreation. The performance

of work or toil." · Encylopædic Dictionary. The .courts have construed the term "common labor" to mean the exercise of one's ordinary business calling. *Sellers v. Dugan,* 18 Ohio, 489-493; *Quarles v. State,* 55 Ark., 10; *Bernard v. Lupping,* 32 Mo., 341.

*Richard S. Horton, contra,* argued that the term "common labor," as used in the statute, meant unskilled labor, citing *Bloom v. Richards,* 2 Ohio St., 387.

ALBERT, C.

It sufficiently appears from the pleadings and the evidence in·this case, that on the 12th day of March, 1898, the plaintiffs and the defendant entered into a contract in writing whereby the plaintiffs agreed to give a performance each day of the week, including Sunday, for a period of five months, commencing June 1, at the defendant's music hall in Omaha. These performances were to consist of music, dancing and contortions. In consideration whereof, the defendant agreed to pay them the sum of $60 per week, and to furnish them with board and lodging. The plaintiffs, in pursuance of this contract, entered into the employ of the defendant, and gave the specified entertainments, in accordance with the terms of the contract, until the 24th day of July, 1898, when they were discharged by the defendant. After the expiration of seven months, they brought an action against the defendant for a breach, of the contract. A trial to a jury resulted in a verdict for the plaintiffs. The defendant brings the case here on error.

1. It is urged by the defendant that the petition is defective for the reason that it does not allege that the plaintiffs were wrongfully discharged; that they have sustained damages by reason of such discharge; nor that they were unable to find employment in their line, after such discharge, at the same or better wages. The petition alleges that the plaintiffs kept and performed their part of the contract. This allegation, taken in connection with other parts of the record, amounts to an allegation that they

kept and performed their part of the contract so far as they were permitted to do so by the defendant. If they kept and performed their part of the contract so far as they were permitted to do so, their discharge was wrongful. As to the omission to allege that they have sustained damages, a sufficient answer is, the petition states the facts, and concludes with the allegation that there is due the plaintiffs, by reason of the matters and things hereinbefore set forth, the sum of $1,125. As to the failure to allege that they were unable to find other employment, that is a matter of defense, and they were not required to anticipate it. *Hamilton v. Love,* 54 N. E. Rep. [Ind.], 437; *Barker v. Knickerbocker Co.,* 24 Wis., 630; *Strauss v. Meertief,* 38 Am. Rep. [Ala.], 8. There is but one case that we have been able to find holding a contrary view, and that is *Fowler v. Waller,* 25 Tex., 696. There the question is not discussed, nor are any authorities cited.

The fifth instruction to the jury is as follows: "If you find from the evidence that Frederick Wirth had authority to make said contract, or that the defendant with full knowledge of the terms ratified the same, or that an estoppel exists, then you must find for the plaintiffs." The defendant insists that this instruction is in direct violation of the rule announced in *Nebraska Wesleyan University v. Parker,* 52 Nebr., 453. The rule referred to is not new, but has no application here. In that case there was not evidence of a ratification, nor of facts constituting an estoppel. In this there is evidence tending to show both.

Complaint is made of the sixth instruction, on the ground that it "was based on a state of facts not put in issue by the pleadings, and was misleading." The foregoing is the extent of the argument on that point. The instruction is too long to set out in this opinion. We have examined it in the light of the record, and do not believe it is vulnerable to the objection urged. On the contrary, we regard it as a fair statement of the law applicable to the pleadings and facts shown in evidence.

The seventh instruction is as follows: "If you find for

the plaintiffs you will assess their damages at the sum of $60 per week from July 24, 1898, to October 31, 1898, together with the reasonable value as shown by the evidence of their board and lodging for the same period." The defendant insists that this instruction is erroneous, in that the jury were instructed to allow the full contract price as damages in case they found for the plaintiff. The instruction was proper, under the pleadings and evidence in this case. It is not claimed that there was any evidence tending to show that the plaintiffs had, or, by the exercise of due diligence, might have, secured other engagements, or of any other fact in mitigation of damages. Under such circumstances, the contract price is the measure of damages. See authorities cited *supra* on the question of the sufficiency of the petition.

The defendant complains of the eighth instruction because it directs the jury that, in case they find for the defendant on the contract alleged in the petition, still they should return a verdict for the plaintiffs for $60; the defendant having admitted that amount to be due. The defendant denied the contract alleged in the petition, but alleged another and different contract. In this connection she pleaded a tender of $60, and renewed that tender by her answer. In legal effect, that was an admission that she owed the defendants that amount. In view of the rest of the instructions and the record, the instruction was proper, and there is no reasonable probability that the jury were misled by it.

It is further urged by the defendant that the contract is illegal and void for the reason that a part of the performances to be given by the plaintiffs were to be given on Sunday. In the determination of the question thus raised, it is not necessary to enter upon a discussion of the relative merits of the various systems of religion, nor of the advantages resulting to the individual or to society from the observance of one day of the week in a particular manner, because, under our form of government, all so-called Sunday laws, whatever the motives that in-

spire them, are purely municipal or police regulations. The authority to enact such laws comes from no system of religion, but from the fundamental law of the land. In the exercise of that authority, the legislature enacted section 241 of the Criminal Code, invoked by the defendant, which, so far as is material at present, is as follows: "If any person of the age of fourteen years or upward shall be found on the first day of the week, commonly called Sunday, sporting, rioting, quarreling, hunting, fishing, or shooting, he or she shall be fined in a sum not exceeding twenty dollars, or be confined in the county jail for a term not exceeding twenty days, or both, at the discretion of the court. And if any person of the age of fourteen years or upward shall be found on the first day of the week, commonly called Sunday, at common labor (work of necessity and charity only excepted), he or she shall be fined in a sum not exceeding five dollars nor less than one dollar." If the contract provides for a violation of this section, it is because the performances provided for by the contract fall within the meaning of "common labor" or "sporting." As to the former term, it is clear to our minds that it does not include entertainments consisting of music and feats of a professional contortionist. Section 254 of the Criminal Code provides that words are to be taken and construed in the sense in which they are understood in common language, taking into account the context and subject matter relative to which they are employed. We are confident that in "common language" the term "common labor" is never understood to include such performances. The fact that, in one part of his argument, counsel urges that they are included in that term, and in another as strenuously urges they are included within the term "sporting," would indicate that such entertainments are not common labor. In *Henderson v. Nott*, 36 Nebr., 154, this court says: "The term 'laborer,' in the sense of the statute, is one who is hired to do manual or menial labor for another, but it does not include every person who performs labor for compensation." In *Re Ho King*, 14 Fed. Rep., 724, a

theatrical actor was held not to be a laborer, in the popular sense of the term. It remains, then, to determine whether such performances fall within the meaning of the term "sporting." "Sport" is defined by Webster as follows: "To divert; to make merry; to represent by any kind of play; to exhibit or bring out in public, as to sport a new equipage; to play; to frolic; to wanton; to practice the diversions of the field; to trifle." According to the same lexicographer, "sporting" means "indulging in sport; practicing the diversions of the field." If we use the definition of "sport," instead of the term itself, in defining the term "sporting," the definition would be as follows: (1) To indulge in diverting; (2) to indulge in merry-making; (3) to indulge in representing by any kind of play; (4) to indulge in bringing out in public, as to indulge in sporting a new hat or carriage; (5) to indulge in play or frolic; (6) to indulge in wantonness; (7) to indulge in trifling; (8) practicing the diversions of the field. It is obvious, we think, that the legislature did not employ the term in the sense of the first, second, fourth, fifth or sixth definition above given. They are too broad; they include too much. If adopted in the construction of the statute, our Sunday law would rival the most stringent of the blue laws. The third is a sense in which the term is rarely used, and is illustrated in the Century Dictionary by a line from Dryden: "Now sporting on thy lyre the loves of youth." As thus illustrated, it, also, is too broad, as it includes many common and innocent diversions. The seventh has no application to this case. This leaves the eighth, "practicing the diversions of the field," as the definition the lawmakers most probably had in mind when the law was enacted. This appears still more probable on an examination of other definitions. In the Century Dictionary the general meaning of sporting is said to be "engaging or concerned in sport or diversion;" the specific meaning, "interested in or practicing field sports." To adopt the general definition would be to impose obviously absurd and intolerable restriction on the personal liberty of the

individual. Had the lawmakers held to such strict views of the sanctity of the day as would be implied from imposing such restrictions on mere diversions and amusements, it is hardly probable that they would have framed the law in such language as to permit buying and selling, and the making of contracts on that day. The making of a contract on Sunday is not a violation of the statute. *Horacek v. Keebler*, 5 Nebr., 355. A sale made on Sunday is not for that reason invalid. *Fitzgerald v. Andrews*, 15 Nebr., 52.

From the foregoing considerations, coupled with the knowledge that to witness a desecration of the Sabbath day is extremely offensive to many people, and is by them believed to have a demoralizing effect on the young, we believe the term "sporting," as used in the statute, applies exclusively to diversions of the field and outdoor sports, which, from their nature, are forced upon the attention of the young and those whose religious sensibilities are thereby offended. But whether it should be so restricted or not, we are satisfied that to give such performances as were given in pursuance of the contract in question is not "sporting" within the meaning of the statute. Whether such performances should be permitted on Sunday is a question exclusively for the legislature.

It is suggested in argument that even though the contract is not in violation of the express provisions of the Sunday law yet, as it was to be performed partly on Sunday, it is contrary to public policy. We can not adopt that view. The state having defined its policy in regard to the proper observance of one day of the week by the enactment of a law against Sabbath-breaking, it is not within the province of this court to add to the restrictions thus imposed. And if it were, we are by no means sure that to permit the defendant to withhold from the plaintiffs what has been found to be their just due, would be the best means of impressing the public with a sense of the sure rewards of virtue, and the sanctity of the Sabbath day.

It is also claimed that the verdict is not sustained by

sufficient evidence. We have examined the evidence with some care, and consider it amply sufficient to that end.

We recommend that the judgment of the district court be affirmed.

DUFFIE and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

NOTE.—The decision in *Sellers v. Dugan*, 18 Ohio, 489-493, cited in plaintiff's brief, is a construction of a statute identical with section 241 of our Criminal Code, which we adopted from Ohio. But the rule, that one state in adopting the statute of another state adopts the judicial construction placed thereon by the former state and makes it a part of the legislative mandate, no longer obtains in Nebraska. *Morgan v. State*, 51 Nebr., 672.

In an action for trespass on the case, "for that the defendant on the seventh day of October, 1883, at said Manchester, hired of the plaintiff a phaeton buggy, horse and harness, to drive about said Manchester, and it was the duty of the said defendant to drive said horse and use said buggy and harness in a careful and prudent manner. Yet the defendant then and there so negligently, wilfully, carelessly and maliciously managed and drove said team, that said buggy was overturned and broken in pieces," the court found the hire according to the declaration; that the same was paid for in advance; that the defendant broke the buggy through careless management. *Held*, there could be no recovery, because the hiring was upon Sunday. *Chenette v. Teehan*, 63 N. H., 149, 150, following *Woodman v. Hubbard*, 25 N. H., 67-69.—REPORTER.