[Civ. No. 10386.   Second Appellate District, Division One.—October 15, 1935.]

UNIVERSAL PICTURES CORPORATION (a Corporation), Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent.

Loeb, Walker & Loeb and Herman F. Selvin for Petitioner.

Everett W. Mattoon, County Counsel, and Fred M. Cross, Deputy County Counsel, for Respondent.

HOUSER, P. J.—The essential facts herein are that one Hymer entered into an agreement with Universal Pictures Corporation, by the terms of which the former was employed as an actor or "artist" by the latter in its production of a "photoplay"; and in which employment Hymer was to receive a salary of $1,000 per week. Among the terms of the agreement was the following provision with respect to the settlement of any disagreement that might arise between the parties, to wit:

"Should any dispute or controversy arise between the parties hereto with reference to this contract or the employment herein provided for, such dispute or controversy shall be referred for determination to a committee consisting of five foundation members of the Actors' Branch of the Academy of Motion Picture Arts and Sciences, which committee is to be selected by the Executive Committee of the Actor's Branch of said Academy of Motion Picture Arts and Sciences. Either party to such arbitration may appeal from the decision rendered by such committee, and in such event the dispute or controversy between the parties hereto shall be determined by the Conciliation Committee of said Academy of Motion Picture Arts and Sciences. Any arbitration hereunder shall be conducted in accordance with the by-laws of said Academy of Motion Picture Arts and Sciences, and in accordance with such rules as may from time to time be formulated by said Academy of Motion Picture Arts and Sciences."

Such a "dispute or controversy" having arisen between the parties, at the instance of Hymer the matter was duly referred to a committee, as provided in the agreement, with the result that said committee made its award to the effect:

"That complainant, Warren Hymer, take nothing on his claim and that respondent, Universal Pictures Corporation, is not obligated or indebted to complainant in respect of the matters in controversy."

Thereafter, in accordance with the provisions of section 1287 of the Code of Civil Procedure, Universal Pictures Corporation presented its application to the superior court "for an order confirming the award". Following a hearing upon said

application,—for the asserted reason that the court was without jurisdiction in the premises,—the said court made its order by which the application was denied. Thereupon, in pursuance of a petition presented herein by Universal Pictures Corporation, from a consideration of the statutes applicable in such cases, and it appearing that the right of appeal from such order by Universal Pictures Corporation was at least questionable, this court caused its alternative writ of mandate to issue by which, in effect, the said superior court was directed either to make and enter its order by which said award would be confirmed, or failing in that regard, that it show cause why such an order should not be made and entered. The respondent has demurred to, but has not answered said petition.

The principal question presented by the parties herein relates to the construction that, in the circumstances and facts herein, should be placed upon the language that appears in section 1280 of the Code of Civil Procedure, to the effect that the provisions of the several statutes with reference to arbitration ''shall not apply to contracts pertaining to labor''; that is to say, on behalf of respondent, it is contended that the purpose and intent of the legislature in enacting such statutes was that they should have no application to a controversy that might thereafter arise from a contract that might involve the payment of compensation for the performance of services of any kind or character; and on behalf of the petitioner, it is urged that a fair construction of the questioned language of the statute impels the conclusion that one who occupies a position such as was occupied by Hymer is not to be regarded as a ''laborer'', and, consequently, as between him and his employer, that the several statutes that relate to ''arbitration'' are effective and binding upon the respondent court as they may affect its duty in the premises.

In that connection, considering the very large number of cases that heretofore have been decided throughout the United States wherein was involved the question of what constituted ''labor'', or who, under the provisions of the various statutes that relate to a claim that may arise from a statutory right of lien, or preference by a workman for wages theretofore earned by him, or to immigration laws, or to statutes of exemption from execution of judgments, etc., were ''laborers'', the authorities cited to this court by the respective parties to

this litigation, although not numerous, yet, taken together with others, particularly those that are digested under the title of "Labor", in the several editions of Words and Phrases, are illustrative of the fact that unanimity in conclusion regarding the point here at issue does not exist; but to the contrary, such authorities demonstrate that the decisions of one jurisdiction, as compared with those of another, are not only in conflict one with the other, but that as well, as a whole, they serve but to create a confusion with reference to a settlement of the precise question here under consideration. However, with but few exceptions, it seems to be generally conceded that individuals whose principal efforts are directed to the accomplishment of some mental task, such as those of ministers of the gospel (*Church of Holy Trinity* v. *United States*, 143 U. S. 457 [12 Sup. Ct. 511, 36 L. Ed. 226]); lawyers (*Latta* v. *Lonsdale*, 107 Fed. 585 [52 L. R. A. 479]; *Gay* v. *Hudson River E. P. Co.*, 178 Fed. 499); doctors (*Weymouth* v. *Sanborn*, 43 N. H. 171 [80 Am. Dec. 144]); teachers (*School District* v. *Gautier*, 13 Okl. 194 [73 Pac. 954]; *Tatsukichi Kuwabara* v. *United States*, 260 Fed. 104; *Lesuer's Case*, 227 Mass. 44 [116 N. E. 483, L. R. A. 1918F, 197]); or actors (*Wirth* v. *Calhoun*, 64 Neb. 316 [89 N. W. 785]; *In re Ho King*, 14 Fed. 724]; or those persons generally known and recognized as professional men or women, even though in its broad sense perform "labor", are not to be, nor should be, classified as "laborers". That such a conclusion is in accord with the popular, every-day notion of what constitutes "labor" is so well recognized and attested as a fact that its existence needs no illustration; but it is common knowledge that the "pick-and-shovel" man, or even the skilled mechanic, regards as ridiculous the suggestion that any so-called "white collar" individual ever performs any real labor; and the same idea, perhaps to a somewhat lesser degree, prevails as to a subordinate clerk in comparison with a high-salaried executive, or a man in any well-recognized professional employment; and to make use of an example that strikes nearer home, to the "man on the street", the suggestion that a judge ever "labors" is simply absurd.

Reverting to the particular question here under consideration, it may be well to remember that, in construing the language of a statute, it is a universal rule that, excepting when clearly otherwise intended or indicated, words in a

statute should be given their ordinary meaning and receive a sensible construction in accord with the common understanding of men. Dependent upon ample authority, and perhaps more accurately expressed, the rule is stated in 23 California Jurisprudence, page 749, as follows: '' . . . words of a statute . . . are to be interpreted according to their common acceptance, i. e., they will be deemed to have been used and will be read and understood in their usual, natural, ordinary and popular sense . . . unless they have a well-understood technical meaning . . . '', etc.

Section 13 of the Civil Code provides: ''Words and phrases are construed according to the context and the approved usage of the language; . . . ''

Section 3542 of the same code requires that ''Interpretation must be reasonable''; and with relation to the construction that should·be placed upon the language contained in a contract, section 1644 of that code provides that ''The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; . . . '' ''And it has been decided, not only that the language of a statute must be given a reasonable interpretation, but that every statute as a whole must be so construed, and thus, when opportunity arises, made compatible with common sense and the·dictates of justice.'' (23 Cal. Jur. 722.) And it has been repeatedly held that in construing a statute, courts are not always to be governed by the exact phraseology and literal meaning of every word or phrase employed. (23 Cal. Jur. 735.)

In the instant matter, it therefore becomes clear that, notwithstanding the broad meaning that may or might be attributed to the word ''labor'', since no rule of construction of the statute in which it is employed demands that the word ''labor'' as used therein be accepted and read otherwise than as it is commonly understood, its general meaning should be restricted. In its present connection, the meaning that should be attributed to the word is that it applies to that kind of human energy wherein physical force, or brawn and muscle, however skilfully employed, constitute the principal effort to produce a given result, rather than where the result to be accomplished depends primarily upon the exercise of the mental faculties.

Comparatively few men are actors or "artists" who earn or are capable of earning $1,000 per week. Until within recent years, that sum represented more money per week than was paid to the President of the United States as salary for his services. Although in the course of his duties as an actor or "artist", Mr. Hymer may perform that which, considered from his viewpoint, may be "labor", to the lay mind, to all practical intents and purposes, the exercise of his talents and genius as an "artist" may not be so classified. Essentially, in the contemplation of the ordinary individual, the work done by an actor or "artist" is not that of a "laborer", but rather is that of a man engaged in a professional pursuit.

It follows that the alternative writ hereinbefore issued by this court should be made permanent; that is to say, that in accordance with the statutes of this state, the respondent herein be and it is directed to make and enter its order by which the arbitration award to which reference hereinbefore has been had, be confirmed. It is so ordered.

York, J., and Doran, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 5, 1935.

Seawell, J., Langdon, J., and Thompson, J., voted for a hearing.