**REVERSE and REMAND; and Opinion Filed June 7, 2013.**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-11-01482-CV**

_____

**GAUTAM C. DAFTARY AND SHWETA G. DAFTARY D/B/A PRESTONWOOD DENTAL, Appellants**

**V.**

**PRESTONWOOD MARKET SQUARE, LTD., AND NEW PEPPER SQUARE S/C, LTD., AS ASSIGNEE OF PRESTONWOOD MARKET SQUARE, LTD., HENRY S. MILLER BROKERAGE, LLC, HSM PEPPER SQUARE PARTNERS, LTD. AND HENRY S. MILLER HOLDINGS CORP., Appellees**

**On Appeal from the County Court at Law No. 4**
**Dallas County, Texas**
**Trial Court Cause No. CC-10-01428-D**

## OPINION

Before Justices FitzGerald, Murphy, and Lewis
Opinion by Justice Lewis

This is a commercial lease dispute. Appellants Gautam and Shweta G. Daftary d/b/a Prestonwood Dental (the "Daftarys") leased office space for Shweta's dental practice in a shopping center owned by appellees, affiliates of the Henry S. Miller real estate and brokerage firm (collectively "HSM"). Disputes between the Daftarys and HSM spawned a number of claims: HSM attempted to evict the Daftarys, both parties claimed the other had breached their lease, and the Daftarys contended HSM had violated tort duties as well. The parties agreed to consolidate all claims in a single suit. After proceedings below that included a bench trial, a severance, a partial directed verdict, a jury trial, and a partial judgment notwithstanding the verdict ("JNOV"), the Daftarys appeal. In seven issues they challenge the severance, the

directed verdict, and the JNOV, as well as the trial court's rulings on proposed charge issues, attorney's fees, and the form of the judgment. For the reasons discussed below, we reverse the trial court's judgment and remand this cause for further proceedings.

**Background**

In 1995, the Daftarys rented their office space for a term of five years. They subsequently renewed the original lease (the "Lease") for the five-year option term the Lease offered. In 2005, the parties negotiated their First Amendment to Lease (the "First Amendment"), which provided for two three-year options for renewal. The Daftarys exercised the first option in 2005. Thus, they had one remaining three-year option to renew in 2008. The Daftarys contend they exercised the 2008 option for another three-year term; HSM contends the Daftarys did not renew their option and remained in the leased premises as holdovers with a month-to-month tenancy. The Lease contained a provision for holding over, which stated:

> In the event Tenant remains in possession of the Demised Premises after the expiration of this lease without the execution of a new lease, it shall be deemed to be occupying said premises as a tenant from month to month at a rental equal to the rental (including any percentage rental) herein provided plus fifty percent of such amount otherwise subjected to all conditions, provisions and obligations of this lease insofar as the same are applicable to a month-to-month tenancy.

The Daftarys had been paying a rent of twelve dollars per square foot; thus, the holdover rent would have been eighteen dollars per square foot. However, following the expiration of the first three-year extension term, HSM began invoicing the Daftarys for monthly rent at the same twelve-dollar rate they had been paying for the most recent term. Those invoices never changed from July 2008 through October 2009. The Daftarys paid the invoiced amount each month.

In August 2009, more than a year after the first three-year extension term had ended, a new tenant—a dance studio—moved in next door to the Daftarys' dentist office. The Daftarys immediately lodged complaints about the studio's noise and vibration disturbing their work and their patients. For several months, HSM asserted that it was attempting to identify both

temporary assistance and a permanent solution to the problem. However, early in October, HSM notified the Daftarys that HSM had concluded that any interference from the studio was limited and that HSM had decided not to pursue noise abatement.

The next day, the Daftarys sent a written notice to HSM that it was in default under the terms of the Lease for failing to provide for the Daftarys' quiet enjoyment of the premises. That same day, HSM's property manager proposed "kick[ing the Daftarys] out," relying on their status as holdover tenants. On December 21, 2009, HSM terminated the Daftarys' Lease.

When the Daftarys failed to vacate the premises, HSM filed a forcible detainer action in justice court seeking to evict them. While the eviction suit was pending, HSM and the Daftarys initiated a number of claims against each other in district court. After the justice court made its ruling, the Daftarys appealed the ruling to county court. The parties then filed an agreed motion to consolidate all the claims in the county court at law action; the trial court granted that motion. However, after the court heard the Daftarys' appeal of the forcible detainer action, HSM moved to sever that portion of the suit so it could be made final; again, the trial court granted the motion. The Daftarys appealed the severed eviction judgment, and this Court has issued its opinion in that case. *See Daftary v. Prestonwood Market Square, Ltd.*, No. 05-11-00673-CV, 2013 WL 1737409 (Tex. App.—Dallas April 23, 2013, no pet. h.) (op. on reh'g) [hereinafter *Daftary I*].

The remainder of the consolidated action proceeded to trial. Before the jury was charged, the judge granted a partial directed verdict, ruling that, as a matter of law, the Daftarys had not exercised their option to renew the Lease. The jury, in turn, made a series of findings, some in each party's favor. However, the trial court then granted HSM's motion for judgment notwithstanding the verdict and disregarded certain of those findings. The Daftarys now appeal.

Issues before this Court fall largely into two categories: claims associated with the attempted renewal of the Lease and claims related to HSM's interference with the Daftarys' quiet enjoyment of the premises. After a brief procedural introduction, we will address the key issues in each of these two categories.

**Severance**

In their sixth issue, the Daftarys contend the trial court abused its discretion by severing the forcible detainer judgment. We review a trial court's severance order for an abuse of discretion. *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996). The Daftarys argue it was error for the trial court to release HSM from its agreement to consolidate all claims without a showing of good cause. As the Daftarys note, they raised this issue in *Daftary I* as well. In that case, we concluded the severance issue was not properly before us, because the Daftarys had not perfected their appeal on this issue. *Daftary* I, 2013 WL 1737409, at * 3. However, we stated that if we were to assume the issue was before us, we would conclude the trial court did not abuse its discretion by granting HSM's motion to sever. *Id.* at *4.

There is no question the severance issue is properly before us in this appeal, and so, to avoid any ambiguity, we reiterate and adopt our alternative analysis from *Daftary I* as follows:

> [W]e conclude the trial court did not err by granting HSM's motion to sever. The Daftarys argue the trial court abused its discretion because HSM originally agreed to consolidate all of the cases between the parties and then, in its motion to sever, failed to show good cause for relief from its procedural stipulation to consolidate all claims. For purposes of this opinion, we will assume HSM did agree to the consolidation. To support their argument that HSM was required to show good cause to withdraw the stipulation, the Daftarys cite *Valero Eastex Pipeline Co. v. Jarvis*, 990 S.W.2d 852, 856 (Tex. App.—Tyler 1999, pet. denied). Although the *Jarvis* court did state that a trial court should enter stipulations "unless good cause is shown for rejecting them," the *Jarvis* court also stated "[s]tipulations may be modified or withdrawn, however, at the discretion of the trial court." Assuming HSM did stipulate to the consolidation, *Jarvis* does not require it to show good cause to withdraw.

–4–

Rule 41 provides that "[a]ny claim against a party may be severed and proceeded with separately."  TEX. R. CIV. P. 41.  Severance is appropriate if:  (1) the controversy involves more than one cause of action, (2) the severed claim is one that could be asserted independently in a separate lawsuit, and (3) the severed actions are not so interwoven with the other claims that they involve the same facts and issues.  *F.F.P. Operating Partners, L.P. v. Duenez*, 237 S.W.3d 680, 693 (Tex. 2007) (quoting *Guar[.] Fed. v. Horseshoe Operating*, 793 S.W.2d 652, 658 (Tex. 1990)).  The controlling reasons for a severance are to do justice, avoid prejudice, and further convenience.  *Duenez*, 237 S.W.3d at 693.  The Daftarys do not argue the controversy does not involve more than one cause of action, the severed claim could not have been asserted independently, or the forcible-detainer action is so interwoven with the other claims that they all involve the same facts and issues.  Likewise, the Daftarys do not assert severance would not be in the interest of justice or would create prejudice or inconvenience.  After reviewing the record, we conclude the trial court did not abuse its discretion by granting HSM's motion to sever. *See id.*

*Id.* (footnote omitted.)  Based on this analysis, we overrule the Daftarys' sixth issue.

## Renewal of the Lease

In their second issue, the Daftarys contend the trial court erred in granting HSM's motion for directed verdict.  At the close of evidence, the trial court heard arguments concerning whether the Daftarys had validly exercised their renewal option.  The court ultimately granted a partial directed verdict in HSM's favor, ruling that the Daftarys had not complied with the Lease's terms regarding renewal.

The renewal issue involves two contractual provisions:  "Exhibit B" to the original Lease and the "Renewal Option" section of the First Amendment.  Exhibit B states:

RENEWAL OPTION

Tenant (but not any assignee or subtenant of Tenant, even if Landlord's consent is obtained as required by Article XIX of this lease) is granted the option(s) to extend the term of this lease for ___One (1)___ consecutive extended term(s) of ___Five (5)___ year(s) each, provide[d] (a) Tenant is not in default at the time of the exercise of the respective option, and (b) Tenant gives written notice of its exercise of the respective option at least one hundred eighty (180) days prior to the expiration of the original term or the expiration of the then existing term.  Each extension term shall be upon the same terms, conditions and rentals, except (i) Tenant shall have no further right of renewal after the last extension term prescribed above, and (ii) in the monthly Minimum Guaranteed Rental as follows:

. . . .

| Renewal Year | Minimum Guaranteed Rental | |
|---|---|---|
| 6 – 8 | $15.00 psf | $1,710.00 monthly |
| 9 – 10 | $16.00 psf | $1,824.00 monthly[1] |

The Lease was amended in 2005, after the five-year renewal term authorized by Exhibit B. The 2005 First Amendment contains the following section:

Renewal Option

Upon expiration of this Lease Extension Term, Tenant shall have two (2) additional options to renew the Lease for three (3) additional years at fair market rental rate.

The ultimate question the trial court faced was whether the Renewal Option section of the First Amendment replaced Exhibit B to the original Lease in its entirety, or whether the Exhibit B requirements of written notice by the tenant 180 days before the end of the Lease term remained in effect after the First Amendment. The trial court concluded the requirements of Exhibit B remained in effect and that the Daftarys had not complied with those requirements. On that basis, the court granted the directed verdict.

The Daftarys contend Exhibit B and its provisions regarding notice expired at the end of the five-year term provided for in Exhibit B, i.e., in 2005. They point out that Exhibit B states that the Daftarys "shall have no further right of renewal after the last extension term prescribed above," i.e., the single five-year option provided in that exhibit. Thus, they contend, Exhibit B was a self-contained provision that held no meaning after the end of the only renewal term it contemplated. And when drafting a new option, the parties simply replaced that entire expired provision with the identically titled section in the First Amendment. In support, the Daftarys

---

[1] The remainder of the Exhibit B form was stricken out.

pointed out to the trial court that all other sections of the First Amendment did in fact entirely replace their original corresponding terms.[2]

HSM, on the other hand, contends that the First Amendment section concerning renewal replaced only the number of renewal terms and the length of each such term that was available to the Daftarys beginning in 2005. The amendment did not address Exhibit B's requirements for renewal. Thus, according to HSM, these requirements continued to bind the Daftarys: they could not be in default, and they had to give written notice 180 days before the end of the prior term. HSM relies upon this statement at the end of the First Amendment: "As amended herein, the terms and conditions of the original Lease shall remain in full force and effect." According to HSM, this meant the conditions found in Exhibit B, which were not specifically amended, continued to govern the new terms of renewal.

When we construe a written contract, our primary concern is to ascertain the true intentions of the parties as it is expressed in the contract. *See R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980). But if the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, then the contract is ambiguous, and it creates a fact issue concerning the parties' intent. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003). In this case we have reviewed the Lease and the First Amendment as a whole. We are unable to discern whether the parties drafting the First Amendment intended to maintain the same significant notice requirements for the third and fourth lease terms or whether they intended renewal to be a less onerous procedure for an established tenant. An agreement is ambiguous if it is reasonably susceptible to more than one interpretation. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). Whether an agreement is

---

[2] The only exception is the final section titled "Other," which addressed relocating the Daftarys' space in the shopping center; the Lease did not contain a term corresponding to this section.

ambiguous is a question of law for the court to decide by looking at the agreement as a whole in light of the circumstances present when the agreement was entered. *See id.* at 394.

We conclude the First Amendment section concerning renewal of the Lease is ambiguous because it is just as fairly susceptible to the construction given by HSM as it is to that given it by the Daftarys. When a contract is ambiguous, the ambiguity raises a fact question to be determined by a jury. *See Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). Accordingly, the trial court erred in deciding the renewal issue as a matter of law; the interpretation of the First Amendment was a fact issue for the jury. *See Coker*, 650 S.W.2d at 394 (granting motion for summary judgment improper where ambiguity exists).

We sustain the Daftarys' second issue.

### Constructive Eviction and Breach of the Warranty of Quiet Enjoyment

In their first and third issues, the Daftarys argue the trial court erred in disregarding the jury's findings that HSM had interfered with the Daftarys' use and enjoyment of the leased property. We address the two theories related to such interference in turn.

### *Constructive Eviction*

The jury was asked whether HSM constructively evicted the Daftarys. The trial court instructed the jury that a constructive eviction occurred if the following four elements were satisfied:

> [HSM] intended that [the Daftarys] no longer use or enjoy the leased property;
>
> [HSM's] material act or omission substantially interfered with [the Daftarys'] use and enjoyment of the leased property;
>
> [the Daftarys] were permanently deprived of the use and enjoyment of the leased property; and
>
> [the Daftarys] abandoned the leased property within a reasonable time after [HSM's] interference.

The jury found HSM had constructively evicted the Daftarys. Next, the court instructed the jury to consider the following three elements of damages:

Relocation costs that were a natural, probable, and foreseeable consequence of the constructive eviction.

Costs to finish out a new leased premises that were a natural, probable, and foreseeable consequence of the constructive eviction.

The rent paid by [the Daftarys] during the period when [they were] constructively evicted.

The jury found the Daftarys' damages to be $145,000.[3]

The trial court may grant a JNOV if (1) there is no evidence to support one or more of the jury findings on issues necessary to liability, or (2) a legal principle precludes recovery. *Sheehan v. Adams*, 320 S.W.3d 890, 895 (Tex. App.—Dallas 2010, no pet.). In this case, HSM argued that a legal principle precluded the Daftarys' recovery for constructive eviction. According to HSM, the Daftarys could not prevail on their constructive eviction claim because they were no longer in a landlord-tenant relationship with HSM when they abandoned the premises. The trial court agreed, and it granted the JNOV based upon the jury's finding that the Daftarys' failure to renew its final three-year option was not excused by HSM.

We have already concluded that a factfinder must determine whether the Daftarys effectively renewed their option for the final three-year term. However, we address the constructive eviction issue because our conclusion will not be affected by the resolution of the renewal issue. If the Daftarys did effectively renew, then they abandoned the leased premises before the end of their final three-year term, and HSM's argument is moot. But we also conclude that even if the Daftarys did not effectively renew, and they remained on the premises

---

[3] HSM did not challenge the sufficiency of the evidence to support the damages awarded.

through December 2009 as holdovers in a month-to-month tenancy, they are not foreclosed from prevailing on the constructive eviction theory.

HSM's premise is that a landlord-tenant relationship did not exist when the Daftarys abandoned their office in January 2011. However, we know that HSM treated the relationship as if it were governed by the Lease as long as the Daftarys remained: it demanded holdover rent for every month until the Daftarys left. More importantly, HSM has not identified—and we have not found—clear legal authority employing the time of abandonment as the time when the landlord-tenant relationship must exist. We conclude, on the contrary, that the time when the landlord-tenant relationship is critical is when the landlord acts in a way to interfere with the tenant's enjoyment of the premises. And there is no dispute that such a relationship existed during the summer and autumn of 2009, when noise and vibration problems from the dance studio arose and HSM ultimately informed the Daftarys it was not going to resolve those problems.

HSM's position finds no support in traditional landlord-tenant law. The Lease specifically says that any holdover tenancy was subject to "all conditions, provisions and obligations of this lease insofar as the same are applicable to a month-to-month tenancy." It is beyond dispute that the right to quiet enjoyment must continue to apply for any tenant in a month-to-month tenancy. But if the landlord can terminate the lease after violating that right— as happened here—and then claim the tenant cannot recover because there is no lease, then there is no remedy for the tenant. The landlord can simply interfere with the tenant's possession with impunity.

We acknowledge that a landlord has the right to terminate a month-to-month tenancy. We also acknowledge that a tenant whose lease has been terminated cannot remain on the premises forever. But these concerns are eased by the legal requirement that the tenant leave

within a reasonable time after the landlord's interference. This requirement safeguards both the tenant and the landlord. And in our case, the jury found the tenant did leave within a reasonable time of the interference. Thus, the landlord should not be able to avoid the damages associated with his violation. We conclude HSM could not interfere with the Daftarys' use and possession of their premises, terminate the Lease, and then claim it is not responsible for the interference because the Lease is terminated.

HSM's complaint in its motion for JNOV was limited to this legal issue that no landlord-tenant relationship existed at the time the Daftarys left the leased premises. On appeal, HSM appears to include within that complaint, a challenge to the Daftarys' satisfaction of the fourth element of their claim, i.e., that they abandoned the premises within a reasonable time. We address this challenge separately to determine whether it could provide an alternative basis for upholding the trial court's JNOV. We review a JNOV for evidentiary purposes by looking at the evidence in the light favorable to the jury's finding, crediting favorable evidence if reasonable persons could, and disregarding contrary evidence unless reasonable persons could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807 (Tex. 2005).

Texas law does not recognize any specific time period as constituting a reasonable time as a matter of law. *Coleman v. Rotana, Inc.*, 778 S.W.2d 867, 872 (Tex. App.—Dallas 1989, writ denied). Instead, whether a tenant abandons the premises within a reasonable time is generally a question of fact. *Id.* Reasonableness depends on the facts and circumstances of the particular case. *See Downtown Realty, Inc. v. 509 Tremont Bldg., Inc.*, 748 S.W.2d 309, 311 (Tex. App.—Houston [14th Dist.] 1988, no writ). Thus, it is an issue particularly well-suited to the jury. *See Dallas City Limits Prop. Co., L.P. v. Austin Jockey Club, Ltd.*, 376 S.W.3d 792, 800 (Tex. App.—Dallas 2012, pet. denied) ("Questions of reasonableness are inherently issues for the jury."). In this case, the Daftarys offered expert testimony concerning the difficulties of

moving an established dental practice. Their expert testified he generally advises doctors and dentists to expect such a move to take from twelve to eighteen months. He testified specifically that the thirteen months required for the Daftarys' relocation was a reasonable time. Accordingly, given the facts and circumstances of this case, we conclude there was some evidence in the record from which the jury could have found that the Daftarys abandoned the premises within a reasonable time.

We conclude the trial court erred in disregarding the jury's findings on constructive eviction. We sustain the Daftarys' first issue.

*Breach of the Warranty of Quiet Enjoyment*

The elements of a breach of the warranty of quiet enjoyment are the same as the elements in a constructive eviction claim. *Lazell v. Stone*, 123 S.W.3d 6, 12 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). And the jury, consistently, responded affirmatively to this issue. It found the failure of HSM to comply with the warranty was a producing cause of damages to the Daftarys. And it found the reasonable fees of the Daftarys' attorneys for preparation and trial of this claim was $25,000.

However, the trial court granted HSM's motion for JNOV on this claim because the jury found $0 in damages. Just as in the damages question for constructive eviction, the jury was instructed to consider relocation costs and finish-out costs for the new property. It is undisputed that the evidence supported a recovery for these two elements. Thus, the jury's answer of $0 is clearly contrary to the evidence and cannot stand. However, we cannot simply translate the jury's $145,000 award from the constructive eviction issue to the breach of warranty award because constructive eviction also allowed the jury to add rentals to the award. Thus, a new factfinder must determine the proper amount of damages for the breach of warranty claim. And because HSM contested its liability for breach of warranty, we must remand for a new trial as to

–12–

liability, damages, and attorney's fees. *See Estrada v. Dillon*, 44 S.W.3d 558, 562 (Tex. 2001); *see also* TEX. R. APP. P. 44.1(b).

We sustain the Daftarys' third issue as well.

### *Election of Remedies*

The constructive eviction claim could be rendered in favor of the Daftarys; the breach of warranty claim must be remanded. These claims are based upon the very same conduct by HSM, and the injury is the same. "There can be but one recovery for one injury, and the fact that . . . there may be more than one theory of liability [ ] does not modify this rule." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 303 (Tex. 2006) (quoting *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 8 (Tex. 1991)). The Daftarys are entitled to only one recovery for this single injury. *See Tony Gullo Motors*, 212 S.W.3d at 303–04. If they prevail on their breach of warranty claim, they are entitled to judgment on the most favorable theory supported by the pleadings, evidence, and verdict. But they are not required to elect their remedy until they know what their choices are. *See id*. at 314. Accordingly, we remand the cause to the trial court to allow the Dafrarys to pursue their breach of warranty cause of action and, following trial, to elect their remedy.

### Conclusion

Given our resolution of the issues discussed above, we need not address the Daftarys' remaining issues. We reverse the trial court's judgment.

We remand this cause (a) for the trial court to reinstate the jury's findings on constructive eviction, and (b) for further proceedings consistent with this opinion.

/David Lewis/

DAVID LEWIS
JUSTICE

111482F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

GAUTAM C. DAFTARY AND SHWETA
DAFTARY D/B/A PRESTONWOOD
DENTAL, Appellants

No. 05-11-01482-CV          V.

PRESTONWOOD MARKET SQUARE,
LTD., AND NEW PEPPER SQUARE S/C,
LTD., AS ASSIGNEE OF
PRESTONWOOD MARKET SQUARE,
LTD., HENRY S. MILLER BROKERAGE,
LLC, HSM PEPPER SQUARE
PARTNERS, LTD., AND HENRY S.
MILLER HOLDINGS CORP., Appellees

On Appeal from the County Court at Law
No. 4, Dallas County, Texas
Trial Court Cause No. CC-10-01428-D.
Opinion delivered by Justice Lewis.
Justices FitzGerald and Murphy
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellants GAUTAM C. DAFTARY AND SHWETA DAFTARY D/B/A PRESTONWOOD DENTAL recover their costs of this appeal from appellees PRESTONWOOD MARKET SQUARE, LTD., AND NEW PEPPER SQUARE S/C, LTD., AS ASSIGNEE OF PRESTONWOOD MARKET SQUARE, LTD., HENRY S. MILLER BROKERAGE, LLC, HSM PEPPER SQUARE PARTNERS, LTD., AND HENRY S. MILLER HOLDINGS CORP..

Judgment entered this 7th day of June, 2013.

/David Lewis/

DAVID LEWIS
JUSTICE