Norman C. **BERNHARDT**, Appellee,

v.

**POLYGRAPHIC COMPANY OF AMER-ICA, Inc., Appellant.**

No. 114, Docket 23196.

United States Court of Appeals, Second Circuit.

Argued Dec. 14, 15, 1954.

Decided Jan. 19, 1955.

Defendant, a New York corporation, made a written agreement in New York with plaintiff, then a resident of that State. The agreement provided for the employment of plaintiff as the superintendent of defendant's lithograph plant in Vermont. It also provided:

"Subject to the general supervision and pursuant to the orders, advice and direction of the Employer, Employee shall have charge of and be responsible for the operation of said lithographic plant in North Bennington, shall perform such other duties as are customarily performed by one holding such position in other, same or similar businesses or enterprises as that engaged in by the Employer, and shall also additionally render such other and unrelated services and duties as may be assigned to him from time to time by Employer. * * *

"Employer shall pay Employee and Employee agrees to accept from Employer, in full payment for Employee's services hereunder, compensation at the rate of $15,000.00 per annum, payable twice a month on the 15th and 1st days of each month during which this agreement shall be in force; the compensation for the period commencing August 1, 1952 through August 15, 1952 shall be payable on August 15, 1952. In addition to the foregoing, Employer agrees that it will reimburse Employee for any and all necessary, customary and usual expenses incurred by him while traveling for and on behalf of the Employer pursuant to Employer's directions. * * *

"It is expressly understood and agreed that Employee shall not be entitled to any additional compensation by reason of any service which he may perform as a member of any managing committee of Employer, or in the event that he shall at any time be elected an officer or director of Employer. * * *

"The parties hereto do agree that any differences, claim or matter in dispute arising between them out of this agreement or connected herewith shall be submitted by them to arbitration by the American Arbitration Association, or its successor and that the determination of said American Arbitration Association or its successors, or of any arbitrators designated by said Association, on such matter shall be final and absolute. The said arbitrator shall be governed by the duly promulgated rules and regulations of the American Arbitration Association, or its successor, and the pertinent provisions of the Civil Practice Act of the State of New York relating to arbitrations [section 1448 et seq.]. The decision of the arbitrator may be entered as a judgment in any court of the State of New York or elsewhere. * * *

"The parties hereto do hereby stipulate and agree that it is their intention

and covenant that this agreement and performance hereunder and all suits and special proceedings hereunder be construed in accordance with and under and pursuant to the laws of the State of New York and that in any action special proceeding or other proceeding that may be brought arising out of, in connection with or by reason of this agreement, the laws of the State of New York shall be applicable and shall govern to the exclusion of the law of any other forum, without regard to the jurisdiction in which any action or special proceeding may be instituted."

Plaintiff, having become a resident of Vermont, brought this action in the Vermont state court. His complaint set forth the agreement alleged that defendant had wrongfully discharged plaintiff, and asked damages. Defendant, having removed the suit to the court below, filed its answer, including a counterclaim. Defendant then made a motion for a stay; it alleged that it had served on plaintiff a demand for arbitration, and prayed that plaintiff's suit be stayed "pending appointment of arbitrators and determination by such arbitrators of the controversies which are the subject matter of this action."

The district judge denied the stay on the ground that, under Vermont "law," an agreement to arbitrate "is not binding and is revocable at any time before an award is actually made by arbitrators," and that, under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and related cases, Vermont "law" controlled, 122 F.Supp. 733. Defendant appealed.

The Federal Arbitration Act, 9 U.S. C. §§ 1, 2 and 3, reads as follows:

"§ 1. 'Maritime transactions' and 'commerce' defined; exceptions to operation of title

" 'Maritime transactions', as herein defined, means charter parties, bills of lading of water carriers, agreements relating to wharfage, supplies furnished vessels or repairs to vessels, collisions, or any other matters in foreign commerce which, if the subject of controversy, would be embraced within admiralty jurisdiction; 'commerce,' as herein defined, means commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, or between any such Territory and any State or foreign nation, or between the District of Columbia and any State or Territory or foreign nation, but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

"§ 2. Validity, irrevocability, and enforcement of agreements to arbitrate

"A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

"§ 3. Stay of proceedings where issue therein referable to arbitration

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties

stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

McNamara & Larrow, Guy M. Page, Guy M. Page, Jr., and Joseph A. McNamara, Burlington, Vt., for appellant.

Manfred W. Ehrich, Jr., New York City, and Eugene V. Clark, Bennington, Vt., for appellee.

Before SWAN, FRANK and HINCKS, Circuit Judges.

FRANK, Circuit Judge.

■ 1. We think that a stay, pursuant to Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, is not "substantive" within the meaning of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, and Guaranty Trust Company of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079. We so held, per Judge Learned Hand, in Murray Oil Products Company v. Mitsui & Company, 2 Cir., 146 F.2d 381, 383, where we said: "Arbitration is merely a form of trial, to be adopted in the action itself, in place of a trial at common law: it is like a reference to a master, or an 'advisory trial' under Federal Rules of Civil Procedure, Rule 39(c), 28 U.S.C.A."

■■ 2. Section 3 applies whether or not the agreement is of a kind covered by Sec. 2, i. e., for purposes of Sec. 3, the agreement need not involve a maritime transaction or interstate or foreign commerce. The power to enact Sec. 3 derives from Article III, Section 2 of the Constitution. See, e. g., Shanferoke Coal & Supply Corp. v. Westchester Service Corp., 2 Cir., 70 F.2d 297, 298, affirmed 293 U.S. 449, 55 S.Ct. 313, 79 L.Ed. 583; Agostini Bros. Bldg. Corp. v. United States, 4 Cir., 142 F.2d 854.

■ 3. Plaintiff argues that Section 3 deals with a suit "brought in any of the courts of the United States" and therefore not with a removed suit. We cannot agree. Murray Oil Products Co. v. Mitsui & Co., supra, was a removed suit; see also Parry v. Bache, 5 Cir., 125 F.2d 493, 495.

■ 4. Section 1 of the Act provides that "nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." [1] We need not in this case decide whether this clause is restricted in its application to those sections of the Act relating to interstate and foreign commerce or whether it applies to all sections, including Section 3. For assuming, arguendo, that the second interpretation is correct, we think the clause irrelevant here. The words "any other class of workers", read in connection with the immediately preceding words, show an intention to exclude contracts of employment of a "class" of "workers" like "seamen" or "railroad employees." [2] Plaintiff was not hired as a "worker" but as a plant superintendent, at a salary of $15,000 a year, with

1. For a variety of conclusions as to the meaning and application of this clause, see, e.g., Donahue v. Susquehanna Collieries Co., 3 Cir., 138 F.2d 3, 149 A.L.R. 271; Watkins v. Hudson Coal Co., 3 Cir., 151 F.2d 311; Amalgamated Association v. Greyhound Lines, 3 Cir., 192 F.2d 310; Pennsylvania Greyhound Lines v. Amalgamated Association, 3 Cir., 193 F.2d 327; Tenney Engineering Co. v. United Electrical R. & M. Workers, 3 Cir., 207 F.2d 450; Shirley-Herman Co., Inc., v. International Hod-Carriers, 2 Cir., 182 F. 2d 806, 809, 17 A.L.R.2d 609; Agostini Bros. Building Corp. v. United States, 4 Cir., 142 F.2d 854; International Union v. Colonial Hardware Flooring Co., 4 Cir., 168 F.2d 33; Gatliff Coal Co. v. Cox, 6 Cir., 142 F.2d 876; Lewittes & Sons v. United Furniture Workers, D.C. S.D.N.Y., 95 F.Supp. 851; Ludlow Mfg. & Sales Co. v. Textile Workers Union, D.C.Del., 108 F.Supp. 45.

2. See discussion of the background of this clause in Tenney Engineering Co. v. United Electrical R. & M. Workers, 3 Cir., 207 F.2d 450, 452–453.

952

managerial duties fundamentally different from those of "workers." [3]

The California arbitration statute excludes from its scope "contracts pertaining to labor." Code Civ.Proc. § 1280. The California courts have held that this exclusion does not cover a contract with a sales manager, hired at a salary of $100 per week; Kerr v. Nelson, 7 Cal. 2d 85, 59 P.2d 821; or one with a motion-picture actor to be paid $1,000 per week; Universal Pictures Corp. v. Superior Court, 9 Cal.App.2d 490, 50 P. 2d 500. See also Levy v. Superior Court, 15 Cal.2d 692, 104 P.2d 770, 773, 129 A. L.R. 956. We think these decisions most persuasive.

Reversed.

3. Note, inter alia, the provision contemplating that plaintiff might perform services "as a member of the management committee" and might be "elected an officer or director."