COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
| --- | --- | --- |
| READYONE INDUSTRIES, INC., | | No. 08-13-00161-CV |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 171st District Court |
| | § | |
| JOEL ANTONIO FLORES, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 2012-DCV-02074) |
| | § | |

## **O P I N I O N**

ReadyOne Industries, Inc. appeals from an order denying its motion to compel arbitration. For the following reasons, we sustain Issue One, reverse the order denying the motion to compel arbitration, and remand to the trial court with instructions to enter an order compelling arbitration.

### **FACTUAL AND PROCEDURAL SUMMARY**

This is a non-subscriber negligence case. Joel Antonio Flores filed suit against his employer, ReadyOne, alleging he suffered an on-the-job injury to his hands and fingers on October 20, 2011. Flores also served ReadyOne with his requests for discovery. ReadyOne filed a motion to compel arbitration and to stay the proceedings pending arbitration. In support of its motion, ReadyOne attached the affidavit of Lupe Madrid, the Director of Human Resources and Compliance for ReadyOne Industries and the following documents: (1) the Mutual Agreement

to Arbitrate adopted by NCED[1] on October 1, 2005; (2) the Spanish language version of the Mutual Agreement to Arbitrate adopted by NCED on October 1, 2005; (3) a Receipt and Arbitration Acknowledgment written in Spanish and signed by Flores on February 23, 2006; (4) NCED's Employee Injury Benefit Plan effective after October 2, 2005; (5) the Spanish language version of NCED's Employee Injury Benefit Plan effective after October 1, 2005; (6) the English and Spanish language versions of the Mutual Agreement to Arbitrate adopted by ReadyOne with an effective date of October 1, 2007; (7) the Summary Plan Description/Employee Injury Benefit Plan for injuries after October 1, 2007; and (8) the Spanish language version of the Summary Plan Description/Employee Injury Benefit Plan for injuries after October 1, 2007.

In his response, Flores raised several defenses to arbitration. He also sought discovery related to his defenses of fraudulent inducement and illusory agreement. The trial court deferred ruling on the motion to compel arbitration and entered an order compelling the deposition of ReadyOne's authorized representative. ReadyOne challenged that order by filing an original proceeding in this Court. We conditionally granted mandamus relief because Flores had failed to provide a colorable or reasonable basis for believing that discovery would materially aid him in establishing his defenses to the validity of an arbitration agreement. *See In re ReadyOne Industries, Inc.*, 400 S.W.3d 164 (Tex.App.--El Paso 2013, orig. proceeding). In reaching that decision, we concluded that Flores had failed to present evidence of fraudulent inducement. *In re ReadyOne*, 400 S.W.3d at 169. We also held that the Arbitration Acknowledgement signed by Flores did not incorporate by reference the Summary Plan Description (SPD) for the Employee Injury Benefit Plan, and therefore, the Mutual Agreement to Arbitrate (MAA) was not illusory. *In re ReadyOne*, 400 S.W.3d at 170-72. Likewise, we concluded that the SPD did not

---

[1] ReadyOne was formerly known as the National Center for Employment of the Disabled (NCED) and it was known as NCED at the time Flores began his employment.

incorporate the MAA.  *Id.,* 400 S.W.3d at 172-73.

Flores subsequently filed a supplemental response to the motion to compel arbitration asserting that the MAA is illusory because ReadyOne had judicially admitted the MAA and SPD are one agreement in response to a request for admission in this case and in pleadings filed in this and other cases.  Flores also contended that if the MAA is a stand-alone agreement, it is procedurally unconscionable.  Finally, he continued to assert his fraudulent inducement defense and attached evidence in support of it.  Following two hearings, the trial court entered an order denying ReadyOne's motion to compel arbitration.  ReadyOne then brought this accelerated interlocutory appeal.  *See* TEX.CIV.PRAC.&REM.CODE ANN. § 51.016 (West Supp. 2014) (permitting an interlocutory appeal from the denial of a motion to compel arbitration under the Federal Arbitration Act).

## DENIAL OF ARBITRATION

In its sole issue, ReadyOne challenges the order refusing to compel arbitration.  Flores raised several arguments in opposition to the motion to compel arbitration and the trial court denied the motion without specifying the basis for the ruling.  ReadyOne has addressed each of these arguments and defenses on appeal.  Additionally, ReadyOne challenges the ground raised by the trial court *sua sponte*.

### *Standard of Review and Relevant Law*

We review a trial court's decision to grant or deny a motion to compel arbitration under an abuse of discretion standard. *Ellman v. JC General Contractors*, 419 S.W.3d 516, 520 (Tex.App.--El Paso 2013, no pet.).  Under this standard, we defer to a trial court's factual determinations if they are supported by evidence, but we review a trial court's legal determinations *de novo*.  *In re Labatt Food Serv., L.P.,* 279 S.W.3d 640, 643 (Tex. 2009).

*Ellman*, 419 S.W.3d at 520.

A party seeking to compel arbitration must (1) establish the existence of a valid arbitration agreement; and (2) show that the claims asserted are within the scope of the agreement. *See In re AdvancePCSHealth L.P.*, 172 S.W.3d 603, 605 (Tex. 2005); *Delfingen US-Texas, L.P. v. Valenzuela*, 407 S.W.3d 791, 797 (Tex.App.--El Paso 2013, no pet.). We apply state contract law principles to determine whether a valid arbitration agreement exists. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *Delfingen*, 407 S.W.3d at 797. Once the party seeking to compel arbitration proves that a valid arbitration agreement exists, a presumption attaches favoring arbitration and the burden shifts to the party resisting arbitration to establish a defense to enforcement. *Delfingen*, 407 S.W.3d at 797. In the context of enforcement, defenses refer to unconscionability, duress, fraudulent inducement, and revocation. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001); *Delfingen*, 407 SW.3d at 797. Because the law favors arbitration, the burden of proving a defense to arbitration is on the party opposing it. *IHS Acquisition No. 171, Inc. v. Beatty-Ortiz*, 387 S.W.3d 799, 807 (Tex.App.--El Paso 2012, no pet.), *citing J.M. Davidson*, 128 S.W.3d at 227.

*The Federal Arbitration Act Applies*

We will begin our review by examining whether the Federal Arbitration Act is inapplicable. Citing *Bernhardt v. Polygraphic Company of America*, 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956), Flores argues that the FAA does not govern the MAA because there is no evidence he was personally engaged in interstate commerce. In *Bernhardt*, the plaintiff entered into an employment contract with Polygraphic to become superintendent of the company's lithograph plant in Vermont. *Bernhardt v. Polygraphic Company of America*, 218 F.2d 948, 949 (2nd Cir. 1955). The employment contract contained an arbitration provision. *Id.* Following his

discharge, Bernhardt sued Polygraphic in a Vermont state court for breach of contract. *Id.* The Second Circuit held that the FAA applied to the employment contract, *Bernhardt*, 218 F.2d at 949-50, but the Supreme Court reversed because it concluded that the contract did not evidence a transaction involving commerce within the meaning of section 2 of the FAA, and there was no evidence that Bernhardt, while performing his duties under the employment contract, was working in commerce, producing goods for commerce, or was engaging in activity that affected commerce. *Bernhardt*, 350 U.S. at 200-01, 76 S.Ct. at 275.

The instant case is distinguishable from *Bernhardt* because the MAA specifically provides that ReadyOne is engaged in commerce as that term is defined in Section 1 of the Federal Arbitration Act and the "FAA governs all aspects of this Agreement." It is well established that parties may expressly agree to arbitrate under the FAA. *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011); *Lucchese, Inc. v. Solano*, 388 S.W.3d 343, 348 (Tex.App.-- El Paso 2012, no pet.). Further, ReadyOne submitted evidence that it was regularly engaged in interstate commerce in that it purchases and receives goods and services from outside the state of Texas and it manufactures goods that are shipped and used outside of the state. We conclude that the FAA applies to the MAA. *See In re Border Steel, Inc.*, 229 S.W.3d 825, 830-31 (Tex.App.--El Paso 2007, orig. proceeding)(holding that the FAA applied where the defendant presented evidence that it engaged in interstate commerce and the arbitration agreement contained a provision that the FAA governed).

*The Date Discrepancies on the MAA and Acknowledgement*

ReadyOne challenges the trial court's determination that the MAA is illegal and unenforceable because the MAA recited an effective date of "99/99/9999" and the arbitration acknowledgement stated that Flores had been provided with a MAA effective "10/1/200." Flores

did not raise these date discrepancies as a ground for avoiding arbitration.

A party seeking to compel arbitration must (1) establish the existence of a valid arbitration agreement; and (2) show that the claims asserted are within the scope of the agreement. *See In re Advance PCS Health L.P.*, 172 S.W.3d 603, 605 (Tex. 2005); *Delfingen*, 407 S.W.3d at 797. Once the party seeking to compel arbitration proves that a valid arbitration agreement exists, a presumption attaches favoring arbitration and the burden shifts to the party resisting arbitration to establish a defense to enforcement. *Delfingen*, 407 S.W.3d at 797. ReadyOne presented the trial court with copies of the MAA adopted by NCED/ReadyOne on October 1, 2005, the Receipt and Arbitration Acknowledgement signed by Flores on February 23, 2006, and the MAA adopted by ReadyOne with an effective date of October 1, 2007. These documents are authenticated by the affidavit of ReadyOne's Director of Human Resources and Compliance, Lupe Madrid. This was sufficient to satisfy ReadyOne's burden to establish the existence of a valid agreement to arbitrate. *See In re Jim Walters Homes, Inc.*, 207 S.W.3d 888, 897 (Tex.App.--Houston [14th Dist.] 2006, orig. proceeding)(finding that the submission of an authenticated copy of the agreement containing the arbitration clause satisfied the movant's initial burden). Further, Flores's negligence claim is a covered claim under the MAA. At this point, the burden shifted to Flores to establish a defense to enforcement of the MAA. To the extent the trial court denied ReadyOne's motion to compel arbitration on the basis that ReadyOne failed to satisfy its initial burden, the trial court erred. As we have already noted, Flores did not raise any defenses based on the erroneous dates contained in the MAA adopted by NCED/ReadyOne on October 1, 2005 or in the Arbitration Acknowledgement signed by Flores on February 23, 2006. The trial court erred by refusing to compel arbitration on a ground not raised by Flores.

*The MAA is not Ambiguous or Illusory*

ReadyOne next contends that the trial court erred by impliedly concluding that the MAA is illusory. An arbitration agreement is not illusory unless one party can avoid its promise to arbitrate by amending the provision or terminating it altogether. *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 424 (Tex. 2010); *In re ReadyOne*, 400 S.W.3d at 170. Flores contended in the trial court that the MAA is illusory because it permits ReadyOne to unilaterally modify or amend the agreement. We held in the prior mandamus that the MAA's termination provision complies with *Halliburton*[2] because it requires ReadyOne to give reasonable notice ten days prior to the date of termination and provides that termination is not effective for those covered claims which occurred prior to the date of the termination. *In re ReadyOne*, 400 S.W.3d at 170-71. Flores has consistently argued that the MAA is not a stand-alone document because it is incorporated-by-reference in the SPD. We rejected this argument in the mandamus proceeding, but we observed in a footnote that one phrase in the MAA might be ambiguous. *See In re ReadyOne*, 400 S.W.3d at 170-72 & n.4. Flores continued to maintain the same incorporation-by-reference argument in the trial court but he raised two new arguments in a supplemental response. First, he asserted that that the MAA is ambiguous based on footnote 4 in the mandamus opinion. *See In re ReadyOne*, 400 S.W.3d at 170 n.4. Second, he claimed that ReadyOne judicially admitted that the MAA is not a stand-alone agreement and is instead part of the Employee Injury Benefit Plan.

We will consider first the ambiguity argument. Flores suggests that the trial court resolved the ambiguity to conclude that the parties intended the SPD and Employee Injury Benefit Plan to be part of the MAA, and therefore, the agreement to arbitrate is illusory because the SPD's termination and amendment provision permits ReadyOne to unilaterally modify or amend the MAA without notice. Whether an arbitration agreement is ambiguous is a question of

---

[2] *In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002).

law subject to *de novo* review. *In re D. Wilson Construction Company*, 196 S.W.3d 774, 781 (Tex. 2006). Ambiguity is determined by examining the contract as a whole in light of the circumstances existing when the contract was entered into. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983); *IHR Security, LLC v. Innovative Business Software, Inc.*, 441 S.W.3d 474, 478 (Tex.App.--El Paso 2014, no pet.). We examine the entire document and consider each part with every other part so that the effect and meaning of one part on any other part may be determined. *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996); *IHR Security*, 441 S.W.3d at 478. The entire document is examined in an effort to harmonize and give effect to all of the provisions of the contract so that none will be rendered meaningless. *MCI Telecommunications Corporation v. Texas Utilities Electric Co.*, 995 S.W.2d 647, 652 (Tex. 1999); *IHR Security*, 441 S.W.3d at 478. We presume that the parties to a contract intend every clause to have some effect. *Heritage Resources*, 939 S.W.2d at 121; *IHR Security*, 441 S.W.3d at 478.

Contract language that can be given a certain or definite meaning is not ambiguous and is construed as a matter of law. *Chrysler Insurance Company v. Greenspoint Dodge of Houston, Inc.,* 297 S.W.3d 248, 252 (Tex. 2009); *Coker*, 650 S.W.2d at 393. If the contract is subject to two or more reasonable interpretations after applying the pertinent rules of construction, then the contract is ambiguous, and it creates a fact issue concerning the parties' intent. *J.M. Davidson*, 128 S.W.3d at 229; *IHR Security*, 441 S.W.3d at 478; *Daftary v. Prestonwood Market Square, Ltd.*, 404 S.W.3d 807, 813 (Tex.App.--Dallas 2013, pet. denied).

The MAA is a four-page agreement consisting of thirteen paragraphs. Throughout the MAA, the agreement is referred to as the "Agreement," but in Paragraph 8, it is also referred to as the "Arbitration Program." In Paragraph 12, entitled "Sole and Entire Agreement," the MAA

provides as follows:

> This Program Agreement constitutes the parties' complete agreement and supersedes any prior agreement regarding arbitration of Covered Claims which occur during the Term of this Agreement. Any agreement contrary to, or modifying, any of the provisions included in this Agreement must be entered into, in writing, by the chief executive officer of Company. Oral representations made before or after Employee is hired do not alter this Agreement.

Flores argues that the phrase "This Program Agreement" found at the beginning of paragraph 12 is ambiguous. Flores is correct that this specific phrase is not used anywhere else in the MAA, but that does not necessarily mean that the phrase is susceptible to more than one meaning. Paragraph 12 provides that the agreement supersedes any "prior agreement regarding arbitration of Covered Claims which occur during the Term of this Agreement." The MAA defines "Covered Claims" as any and all claims included in or described by Paragraph 5(a) of the Agreement and it specifically excludes from its reach "[c]laims for benefits under the Company's Employee Injury Benefit Plan." When paragraph 12 is considered as part of the entire MAA, it is apparent that the phrase "This Program Agreement" is referring only to the parties' agreement to arbitrate covered claims. We conclude that the MAA is not ambiguous.

We turn now to Flores's argument that ReadyOne judicially admitted that the MAA is incorporated by reference into Employee Injury Benefit Plan. ReadyOne contends that its "so-called admissions are of no effect because whether documents are incorporated by reference is a legal issue not subject to judicial admission." Flores relied on ReadyOne's response to a request for admission which asked ReadyOne to admit that: "An unseparable [sic] provision of this plan is a provision for mandatory Arbitration." ReadyOne objected to the request because it required a legal conclusion, but it admitted, subject to its objection, as follows: "Admitted that binding arbitration is one of the provisions of Defendant's injury plan. All other aspects denied." Flores also relied on the following statements made by ReadyOne in the motion to compel arbitration

filed in other cases:

> Defendant was a non-subscriber to the Texas Workers' Compensation Act, and provided Plaintiff with an employee injury benefit plan and mutual agreement to arbitrate claims (hereinafter referred to as 'The Plan'). Pursuant to 'The Plan', Plaintiff agreed to submit her [sic] claims in this lawsuit to binding arbitration.[3]

Additionally, Flores pointed to a statement in ReadyOne's motion for a protective order that: "As part of her [sic] benefits, Plaintiff agreed to submit claims such as this to binding arbitration . . . ." Any matter admitted in response to a request for admissions is conclusively established unless the court on motion permits withdrawal or amendment of the admission. TEX.R.CIV.P. 198.3; *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989); *Neal v. Wisconsin Hard Chrome, Inc.*, 173 S.W.3d 891, 894 (Tex.App.--Texarkana 2005, no pet.). It constitutes a judicial admission, and the answering party may not then introduce evidence to controvert it. *Marshall*, 767 S.W.2d at 700; *Neal*, 173 S.W.3d at 894. These principles apply only to answers to a request for admissions about facts. *Neal*, 173 S.W.3d at 894. An answer which constitutes an admission of law is not binding on the court. *Id.*

Similarly, a judicial admission is an assertion of fact, usually found in pleadings or stipulations of the parties, that acts as a formal waiver of proof. *Mendoza v. Fidelity & Guaranty Insurance Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980); *see Ehler v. LVDVD*, 319 S.W.3d 817, 824 (Tex.App.--El Paso 2010, no pet.)(judicial admissions are assertions of fact, not pleaded in the alternative, in the live pleadings of a party). A judicial admission that is clear and unequivocal has conclusive effect and bars the admitting party from later disputing the admitted fact. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001).

We have already determined as a matter of law that the MAA is unambiguous and it is a

---

[3] The cases are *Margarita Simental v. ReadyOne Industries, Inc.* (cause number 2011-2790), *Roberto Carreon v. ReadyOne Industries, Inc.*, (cause number 2011-DCV-00940), and *Maria G. Guillen-Chavez v. ReadyOne Industries, Inc.*, (cause number 2011-DCV-00615).

stand-alone agreement which is not incorporated by reference into the acknowledgement or Employee Injury Benefit Plan. The request for admission asked ReadyOne to admit a legal conclusion. As such, it is not binding. *See Neal*, 173 S.W.3d at 894 (admission that plaintiff was not defendant's employee was a legal conclusion and was not binding). Likewise, the statements made in pleadings filed by ReadyOne in this and other cases which could be read as admitting the MAA is not a stand-alone agreement are legal conclusions, not judicial admissions of fact. Consequently, they are not judicial admissions.

Finally, we note that both parties have fully briefed whether the MAA is a stand-alone agreement and whether it is incorporated by reference in the SPD and Employee Injury Benefit Plan. These issues were addressed in depth in the prior mandamus proceeding and we decline to reconsider them here. *See In re ReadyOne*, 400 S.W.3d at 170-72.

*Fraudulent Inducement*

ReadyOne next contends that Flores failed to establish that he was fraudulently induced to enter into the MAA. A contract is subject to avoidance on the ground of fraudulent inducement. *Italian Cowboy Partners, Ltd. v. Prudential Insurance Company of America*, 341 S.W.3d 323, 331 (Tex. 2011). The elements for fraudulent inducement are the same as for fraud: (1) that a material representation was made, (2) the representation was false, (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party would act upon it; (5) the party acted in reliance on the representation; and (6) the other party thereby suffered injury. *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009); *In re ReadyOne*, 400 S.W.3d at 169.

In his affidavit attached to his supplemental response, Flores claimed that he did not

remember signing the acknowledgement and he was required to sign many documents but did not know why. He was told by someone from Human Resources "that the documents are for benefits if you get hurt on the job, just sign them" or words to that effect. Flores claimed he was "misled into believing that the documents were not important and were just routine documents that the company needed to complete their paperwork on my employment and so I could receive benefits if I was hurt on the job." He also asserted that no one told him he was giving up important rights and he did not know he was signing an arbitration agreement.

Flores's affidavit failed to establish that ReadyOne made a material representation that was false. *See In re ReadyOne Industries, Inc.*, 420 S.W.3d 179, 186-87 (Tex.App.--El Paso 2012, orig. proceeding)(plaintiff failed to show or provide a colorable basis or reason to believe that discovery would be material in establishing that the arbitration agreement was invalid based on fraudulent inducement where the plaintiff stated in her affidavit that she "was given a few documents to sign during [her] brief orientation," that she "was only given signature pages and was not explained what the documents related to," and that she "assumed the documents related to [her] W-2 tax forms...."); *In re ReadyOne Industries, Inc.*, 394 S.W.3d 680, 687-88 (Tex.App.--El Paso 2012, orig. proceeding)( plaintiff failed to show or provide a colorable basis or reason to believe that discovery would be material in establishing that the arbitration agreement was invalid based on fraudulent inducement where she stated in her affidavit that she was given many documents to sign, she took them home so that her husband could review them, she did not remember signing them, and that no one told her that she was signing an arbitration agreement or what that meant; plaintiff failed to offer any proof of fraud). Consequently, we conclude that the trial court erred by impliedly finding that Flores established this defense to enforcement of the MAA.

*Procedural and Substantive Unconscionability*

Flores also raised the defense of unconscionability in the trial court. Agreements to arbitrate disputes between employers and employees are generally enforceable under Texas law. *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). There is nothing *per se* unconscionable about an agreement to arbitrate employment disputes and Texas law has historically favored agreements to resolve such disputes. *Id.* But an arbitration agreement is invalid if it is unconscionable. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677-79 (Tex. 2006); *In re Halliburton Company*, 80 S.W.3d 566, 572 (Tex. 2002). Because the law favors arbitration, the party opposing arbitration bears the burden to prove unconscionability. *See In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 756 (Tex. 2001).

Unconscionability of an arbitration agreement may exist in one or both of two forms: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself. *In re Halliburton*, 80 S.W.3d at 571; *Pilot Travel Centers, LLC v. McCray*, 416 S.W.3d 168, 180 (Tex.App.--Dallas 2013, no pet.). Unconscionability has no precise legal definition because it is not a concept but a determination to be made in light of a variety of factors. *Delfingen*, 407 S.W.3d at 798, *citing Southwestern Bell Telephone Company v. DeLanney*, 809 S.W.2d 493, 498 (Tex. 1991) (Gonzalez, J. concurring). In determining whether a contract is procedurally unconscionable, we must examine (1) the "entire atmosphere" in which the agreement was made; (2) the alternatives, if any, available to the parties at the time the contract was made; (3) the "non-bargaining ability" of one party; (4) whether the contract was illegal or against public policy; and (5) whether the contract is oppressive or unreasonable. *Delfingen*, 407 S.W.3d at 798; *Ski River Development, Inc. v. McCalla*, 167 S.W.3d 121, 136

(Tex.App.--Waco 2005, pet. denied). The totality of the circumstances must be assessed as of the time the contract was formed. *Delfingen*, 407 S.W.3d at 798; *Ski River*, 167 S.W.3d at 136. The circumstances surrounding the negotiations must be sufficiently shocking to compel the court to intercede. *Delfingen*, 407 S.W.3d at 798; *Ski River*, 167 S.W.3d at 136. We apply the abuse of discretion standard articulated in *Delfingen* to this issue. *See Delfingen*, 407 S.W.3d at 799-800 (concluding that unconscionability is a legal question which is reviewed *de novo* by the appellate court, but the court must defer to the trial court's fact findings if they are supported by the evidence).

We begin by examining the issue of procedural unconscionability. The evidence established that Flores was provided with both English and Spanish language versions of the documents at issue. Flores averred in his affidavit that he has limited ability to read, write, or understand English, and each sentence of his affidavit was translated to him in Spanish. He did not remember signing the acknowledgement dated 2/23/06. He recalled going to the facilities from time to time to sign numerous documents related to his employment, but he did not know why he was required to sign the documents. ReadyOne did not explain the documents to him in an orientation session, and he was told by someone from Human Resources "that the documents are for benefits if you get hurt on the job, just sign them" or words to that effect. Flores also asserted that he was "misled into believing that the documents were not important and were just routine documents that the company needed to complete their paperwork on my employment and so I could receive benefits if I was hurt on the job." Flores additionally stated he did not know he was signing an arbitration agreement and he was not told that he was giving up important rights.

Citing *Delfingen*, Flores argues that the trial court could have believed his affidavit and

could have concluded that the statements made in that affidavit establish procedural unconscionability. In *Delfingen,* we upheld the trial court's order refusing to compel arbitration because the evidence showed that the plaintiff was illiterate in English, Spanish language versions of the documents in question were not provided to the plaintiff, and according to the plaintiff, a representative of the defendant affirmatively misrepresented the contents of the arbitration agreement. *Delfingen*, 407 S.W.3d at 801-02.

The instant case is distinguishable from *Delfingen*. While Flores offered evidence that he is unable to read English, ReadyOne provided him with Spanish language versions of the documents in question. We observed in *Delfingen* that a person who signs a contract must be held to have known what words were used in the contract and to have known their meaning, and he must be held to have known and fully comprehended the legal effect of the contract. *Delfingen*, 407 S.W.3d at 801; *In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869, 878 (Tex.App.-- El Paso 2005, orig. proceeding). Absent proof of mental incapacity, a person who signs a contract is presumed to have read and understood the contract unless he was prevented from doing so by trick or artifice. *Delfingen*, 407 S.W.3d at 802. There is no evidence in the record before us that ReadyOne affirmatively misrepresented the contents of the documents or that Flores was prevented by trick or artifice from reading the MAA and Arbitration Acknowledgement. Consequently, it must be presumed that he read and understood these documents. The record does not support the trial court's implied conclusion that Flores established his defense of procedural unconscionability.

We turn now to the issue of substantive unconscionability. Flores argued in the trial court that the MAA is substantively unconscionable because it attempts to alter his substantive rights "under the pretext of an agreement to arbitrate," it "attempts to prohibit Plaintiff from

filing suit," and it "attempts to require Plaintiff to provide its own self-defined 'notice' that purportedly is not affected by filing or serving suit." Flores did not direct the trial court's attention to any specific provisions which render the MAA procedurally unconscionable. Contrary to Flores' argument, the MAA does not contain any type of notice provision or requirement. Further, the MAA does not prohibit Flores from filing suit and it contains a provision which preserves the parties' substantive rights and remedies. As observed by ReadyOne, the MAA contains language that the parties are waiving all rights to trial in state and federal court, but it provides that the parties are entitled to allege any claims, obtain any remedy and assert any legal or equitable defenses that the party could allege, obtain, or assert in a Texas state or federal court. Given that the MAA ensures preservation of the substantive rights and remedies of the litigants, we conclude that it is not substantively unconscionable.

*Other Defenses to Enforcement of the MAA*

Flores raised several other arguments as defenses to enforcement of the MAA. First, he alleged that the MAA is unenforceable under Section 406.033(a) of the Texas Labor Code. This statute provides that a non-subscriber negligence cause of action may not be waived by an employee before the employee's injury and any pre-injury agreement by an employee to waive a cause of action is void and unenforceable. TEX.LABOR CODE ANN. § 406.033(e)(West Supp. 2014). Section 406.033(a) does not render the MAA void because it is not a pre-injury waiver of his non-subscriber negligence cause of action. *See In re Odyssey Healthcare, Inc.*, 310 S.W.3d at 423; *In re Golden Peanut Co., LLC*, 298 S.W.3d 629, 631 (Tex. 2009).

Second, Flores asserted that the MAA is unenforceable under Section 171.002 of the Texas Civil Practice and Remedies Code because his attorney did not sign the arbitration agreement. This statute provides that Chapter 171 (the Texas General Arbitration Act) does not

- 16 -

apply to a claim for personal injury unless the arbitration agreement is signed by each party and each party's attorney. TEX.CIV.PRAC.&REM.CODE ANN. § 171.002(a)(3), (c)(West 2011). Section 2 of the FAA preempts state law that would otherwise render arbitration agreements unenforceable in a contract involving interstate commerce. 9 U.S.C.A. § 2 (West 2009); *Southland Corp. v. Keating*, 465 U.S. 1, 10-11, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). This preemption has been applied to Section 171.002 of the Civil Practice and Remedies Code. *See In re Olshan Foundation Repair Company, LLC*, 328 S.W.3d 883, 890 (Tex. 2010)(holding that the FAA preempts the provisions of Section 171.002 that would otherwise render an arbitration agreement unenforceable).

Finally, Flores argued in the trial court that compliance with the FAA violates the Tenth Amendment by interfering with the Workers' Compensation Act. The Texas Supreme Court has decided this contention adversely to Flores. *See In re Odyssey Healthcare, Inc.*, 310 S.W.3d at 423-24 (holding that the FAA does not violate the Tenth Amendment by encroaching on a state power to enact and regulate its own workers' compensation system.).

ReadyOne carried its burden of establishing the existence of an agreement to arbitrate the claims raised by Flores in his suit. Flores did not establish that there are any valid defenses to enforcement of the MAA. Accordingly, the trial court erred by denying ReadyOne's motion to compel arbitration. Issue One is sustained. We reverse the order denying ReadyOne's motion to compel arbitration and remand the cause to the trial court with instructions to enter an order granting ReadyOne's motion to compel arbitration.

December 10, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.
(Rivera, J., not participating)

- 17 -